UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| ROBERT JONES, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>COMMISSIONER OF SOCIAL SECURITY, )<br>)<br>Defendant. )<br>) | Civil No. 5:14-cv-00457-GFVT<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

The Plaintiff, Mr. Robert Jones, brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security, which denied Jones's claim for Supplemental Security Income and Disability Insurance Benefits. The Court, having reviewed the record and for the reasons set forth herein, will DENY Mr. Jones's Motion for Summary Judgment [R. 11] and will instead GRANT the Commissioner's [R. 12.]

**I**

**A**

Mr. Robert Jones has sought Disability Insurance Benefits now for quite some time. Initially, Jones filed applications for Supplemental Security Income and Disability Insurance Benefits on March 17, 2008, alleging a disability onset date of April 1, 2004. [Transcript ("Tr.") 19.] These claims were denied in the first instance, on reconsideration, and following a June 2010 hearing before Administrative Law Judge ("ALJ") Katharine Wisz. ALJ Wisz's decision denying Mr. Jones benefits was affirmed on appeal to the Appeals Council and by the United

States District Court, Eastern District of Kentucky. [*Id.*] *See Jones v. Astrue*, No. 11-378-KKC, 2013 WL 74234 (E.D. Ky. Jan. 7, 2013). On December 2, 2011, Mr. Jones filed a new application, this time alleging a disability onset date of April 1, 2005. [*Id.*] Jones's second application was denied first on January 25, 2012, then upon reconsideration on April 20, 2012. At Jones's request, a hearing was conducted during which Joyce P. Forrest, a vocational expert, testified regarding Mr. Jones's condition and vocational prognosis. Mr. Jones was—and remains—represented by an attorney Stacey H. Hibbard. [*Id.*] Following the hearing, ALJ Holsclaw issued a final decision which denied Jones's claim. [Tr. 19-29.]

Mr. Jones was thirty-four years old at the time of the alleged disability onset. [Tr. 27.] According to his motion for summary judgment, his present physical condition stems from connective tissue disease diagnosed as seronegative or autoimmune spondyloarthropathy, as well as sleep apnea, cervical and lumbar degenerative disc disease with radiation, hypertension, and chronic neck and back pain. [R. 11-1 at 2.] After considering the evidence in the record as well as the testimony of the vocational expert, the ALJ concluded there are several types of jobs that exist in significant numbers in the national economy that Mr. Jones can still perform. [Tr. 28.] Therefore, he did not deem Mr. Jones disabled.

To evaluate a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. 404.1520.[1] First, if a claimant is performing a substantial gainful activity, he is not disabled. 20

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled."  20 C.F.R. § 404.1520(d).  Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity ("RFC"), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual.  *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.  Fourth, the ALJ must determine whether the clamant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled."  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is "disabled."  20 C.F.R. § 404.1520(f).

In this case, at Step 1, the ALJ found that Jones had not engaged in substantial gainful activity since June 18, 2010, the amended alleged onset date.[2]  [Tr. 22.]  At Step 2, the ALJ found Jones to suffer from the following severe impairments: connective tissue disorder or inflammatory disorder(s) affecting his joints that is identified alternatively throughout the record as Reiter's syndrome/neuropathy/polymyositis/myelitis/chronic pain syndrome/seronegative or

---

*Id.* at 474 (internal citations omitted).

[2] In his second application, Mr. Jones alleged an onset date of April 1, 2005; however, because of his prior unsuccessful application, the ALJ determined the principle of administrative *res judicata* applied to Jones's case up to June 17, 2010.  [Tr. 19.]  At the hearing before ALJ Holsclaw, Mr. Jones through his attorney amended the alleged disability onset date to June 18, 2010.  [Tr. 20.]

3

autoimmune spondyloarthropathy; obstructive sleep apnea; cervical and lumbar degenerative disc disease with radiation; hypertension; degenerative disc disease chronic neck and back pain; obesity; and left ganglion. [*Id.*] At Step 3, the ALJ found that, while Jones's condition is "severe," it did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 25.]

Before moving on to Step 4, the ALJ considered the record and determined that Jones possessed the residual functional capacity to perform sedentary work, with certain limitations described as follows:

> [N]o lifting/carrying more than 10 pounds occasionally; no standing/walking more than two hours out of an eight-hour day and for no more than 30 minutes at one time; no sitting more than six hours out of an eight-hour day and for no more than 30 minutes at one time; can do unlimited pushing/pulling up to the exertional limitations; no reaching overhead bilaterally; no work around bright or flashing lights; no crawling, crouching, kneeling, or climbing of ladders, ropes, or scaffolds; no more than occasional balancing, stooping, or climbing ramps or stairs; no operation of foot controls; must avoid exposure to commercial driving, unprotected heights or industrial hazards, such as dangerous, moving machinery or unprotected heights; must use a cane for purposes of walking on level surfaces, but not for balance (20 CFR 404.1567(a) and 416.967(a)).

[*Id.*] After explaining how he determined Jones's RFC [Tr. 25-27], the ALJ found at Step 4 that, based on his RFC, Jones is unable to perform any past relevant work. [Tr. 27.] At Step 5, the ALJ determined that, based on Jones's RFC and the vocational expert's testimony, there are jobs that exist in the national economy that Jones can perform. [Tr. 28.] Accordingly, the ALJ ultimately concluded Jones is not disabled and, therefore, is ineligible for disability insurance benefits under § 216(i) and § 223(d) of the Social Security Act, and is also ineligible for supplemental income under § 1614(a)(3)(A) of the Social Security Act. [Tr. 29.] The Appeals Council declined to review the ALJ's decision on October 23, 2014 [Tr. 1-5], and Mr. Jones now seeks judicial review in this Court.

**B**

The Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To determine whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citation omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**II**

Mr. Jones asks the Court to consider only one issue as grounds for overturning the ALJ's unfavorable decision: that the ALJ failed to properly consider the opinion of Ms. Casey, Mr. Jones's treating nurse practitioner. [R. 11-1 at 2.] Mr. Jones admits that Casey, as a nurse practitioner, is not considered an "acceptable medical source;" rather, nurse practitioner opinions are treated as "other sources" in making RFC determinations. Social Security Ruling 06-03p, issued in August 2006, clarifies the agency's policies regarding these "other sources," and Jones maintains ALJ Holsclaw failed to follow the guidance set forth in that policy statement.

Social Security Ruling ("SSR") 06-03p contains various instructions regarding how the agency weighs opinions from sources who are not "acceptable medical sources" when making an RFC determination. SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Key excerpts from the ruling, which are relevant to the Court's analysis of Mr. Jones's case, read as follows:

> In addition to evidence from "acceptable medical sources," we may use evidence from "other sources," as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function.

> Information from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

> Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

> Not every factor for weighing opinion evidence will apply in every case. The evaluation of an opinion from a medical source who is not an "acceptable medical source" depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case.

> [D]epending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Id.*

In light of SSR 06-03p, the Sixth Circuit has explained that an ALJ should "provide some basis" for choosing to reject a treating nurse practitioner's opinion. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). In *Cruse*, an ALJ rejected a treating nurse practitioner's finding that the claimant was unable to return to work. *Id.* As grounds for rejecting her opinion, the ALJ merely stated the nurse practitioner was "neither a medical doctor nor a vocational expert, and thus lacks the credentials for making such a determination." *Id.* The court deemed this explanation on the part of the ALJ to be "devoid of any degree of specific consideration" of

7

the nurse practitioner's assessments and, thus, to fall short of what SSR 06-03p contemplates from adjudicators. *Id.*

Unlike in *Cruse*, in this case, the ALJ gave specific reasons for assigning little weight to treating nurse practitioner Teresa Casey's opinion. In her RFC, Ms. Casey stated that Mr. Jones could sit, stand, and walk each for less than two hours per day, continuously sit for only twenty minutes at a time, and continuously stand or walk for only ten minutes at a time. [Tr. 460.] The ALJ determined these recommendations were based "primarily on the claimant's subjective complaints rather than objective findings." [Tr. 27.] He noted Ms. Casey's findings seemed inconsistent with Mr. Jones's recent x-ray results from the University of Kentucky. [*Id.*] He also indicated that, while Ms. Casey's RFC stated Mr. Jones was unable to do activities he enjoyed such as hunting and fishing, Mr. Jones had in fact been able to do those activities as recently as one year prior.[3] [*Id.*] Finally, the ALJ explained that "Ms. Casey advocates for the claimant's disability, but does not cite specific findings to support her opinion that the claimant would never be able to recover or be able to work . . . ." [*Id.*]

The ALJ's treatment of Ms. Casey's opinion was not improper. Rather than rejecting Ms. Casey's findings outright, the ALJ explained why he found her opinion to be less credible than other evidence in the record, despite the fact she was a treating source. In her RFC findings,

---

[3] Mr. Jones takes issue with the ALJ's treatment of Jones's testimony that he had recently been hunting or fishing, because "the ALJ left out important testimony from Mr. Jones that those activities were performed rarely and with significant accommodations for his condition." [R. 11-1 at 13.] Indeed, during the hearing, the ALJ discussed Mr. Jones's hunting and fishing accommodations, such as hunting from his vehicle and fishing from a chair, at some length. [Tr. 64-66.] It is true that the ALJ did not cite evidence suggesting he is able to hunt and fish "on a sustained basis." *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 378 (6th Cir. 2013). However, the fact that Mr. Jones has participated in those activities at all could reasonably be determined to conflict with Casey's RFC. The ALJ was not required to mention the details of Jones's hunting and fishing accommodations in his opinion, particularly where he used Jones's testimony to contradict Ms. Casey's indication that Jones is no longer able to participate in those activities at all. [*See* Tr. 463.]

Casey stated Mr. Jones suffers from an autoimmune spondyloarthropathy "which is causing degeneration of the joint spaces limiting his mobility." [Tr. 457.] However, Mr. Jones's August 2012 x-ray results indicated his hand, wrist, and feet joint spaces remained preserved. [Tr. 444.] Casey went on to state that Mr. Jones "will never recover or be able to work – he has too much physical damage and ongoing degradation." [Tr. 463.] However, Mr. Jones's treating physicians at the University of Kentucky Healthcare's Rheumatology Clinic stated that Jones was experiencing a forty to fifty percent improvement on his medication regimen, thus undercutting Casey's statement about Mr. Jones's inability to recover or work at any point in the future. [*See* Tr. 444, 464.]

This is not a case where the ALJ rejected a treating nurse practitioner's opinion solely because it was not an "acceptable medical source." *See Cruse*, 502 F.3d at 541; *see also Martin v. Barnhart*, 450 F. Supp. 2d 1324, 1328-29 (D. Utah 2006). "[T]he extent to which a nurse practitioner's opinion is consistent with 'the record as a whole' is a factor that is properly considered in determining how much weight to afford that opinion." *Irvin v. Soc. Sec. Admin.*, 573 F. App'x 498, 501 (6th Cir. 2014) (citing 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4)). While SSR 06-03p instructs an ALJ to consider the findings of "other sources" like Ms. Casey, the ALJ is not necessarily required to give a treating "other source" substantial weight or to adopt that source's findings. Here, the ALJ considered the record and, in making his determination, discussed Mr. Jones's personal credibility (or lack thereof), the Rheumatology Clinic's treating physicians' notes and x-ray results, a sleep center's treatment records, Ms. Casey's RFC, and the findings of state agency reviewing physicians. [*See* Tr. 27-28 (citing, *inter alia*, Exhibits C5F, C11F, C12F, C14F, C15F, C16F, C8A, and C9A).] That the ALJ ultimately

9

decided to afford little weight to nurse practitioner Casey's findings was not improper, based on the rest of the record and the evidence the ALJ did cite and/or discuss.

In conclusion, the Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. As explained at the outset, the substantial evidence standard is deferential, as it "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen*, 800 F.2d at 545. If the decision is supported by substantial evidence, it must be affirmed even if the Court would decide the matter differently and even if substantial evidence also supports the opposite conclusion. *Her*, 203 F.3d at 389-90. The Court finds the ALJ's decision is supported by substantial evidence in this case, particularly in light of the treatment records from Mr. Jones's rheumatologists which suggest an improvement of his condition with the proper combination of medications. [*See, e.g.*, Tr. 444, 464.] Though Ms. Casey may have interacted with Jones more than other treating physicians [*see* R. 11-1 at 13], SSR 06-03p does not require an ALJ to give controlling weight to a treating nurse practitioner—it merely allows an ALJ to do so. *See* SSR 06-03p ("For example, it *may be appropriate* to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.") (emphasis added). On the whole, the Court finds the ALJ appropriately discussed Casey's findings and assigned greater weight to other evidence in the record. Mr. Jones's motion for summary judgment will, therefore, be denied.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Mr. Jones's Motion for Summary Judgment [R. 11] is **DENIED**;

2. The Commissioner's Motion for Summary Judgment [R. 12] is **GRANTED**; and

3. Judgment in favor of the Defendant will be entered contemporaneously herewith.

This the 24th day of March, 2016.

Gregory F. Van Tatenhove
United States District Judge